**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Rane Wilson,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-17-08252-PCT-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Samuel Rane Wilson's Application for Supplemental Security Income Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 14, "Def.'s Br."), and Plaintiff's Reply (Doc. 17, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's decision (R. at 21–33) as upheld by the Appeals Council (R. at 1–3).

**I. BACKGROUND**

Plaintiff filed an application for Supplemental Security Income Benefits on December 2, 2013 for a period of disability beginning January 2, 2013. (R. at 21.) Plaintiff's claim was denied initially on July 2, 2014 (R. at 22), and on reconsideration on November 19, 2014 (R. at 22). Plaintiff then testified at a video hearing held before an

Administrative Law Judge ("ALJ") on May 10, 2016. (R. at 21.) On August 15, 2016, the ALJ denied Plaintiff's Application. (R. at 33.) On September 20, 2017, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) On November 21, 2017, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: schizoaffective disorder; personality disorder; posttraumatic stress disorder; degenerative disc disease of the lumbar and thoracic spine; osteoarthritis of the right hand and right hip; obesity; asthma; hyperlipidemia; marijuana dependence; and polysubstance disorder. (R. at 23.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 24.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 416.967(b)" in a role such as housekeeper or laundry worker. (R. at 27, 33.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more

than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the opinion of Dr. Courtney Keckich, Plaintiff's treating psychiatrist; and (2) the ALJ erred by discrediting Plaintiff's symptom testimony. (Pl.'s Br. at 1.)

**A.     The ALJ Erred by Rejecting Dr. Keckich's Opinion**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, in Dr. Keckich's assessment of Plaintiff's residual functional capacity on February 27, 2015, she opined that because of Plaintiff's mental limitations, Plaintiff would be "off task" over 30% of an eight-hour workday. (R. at 910.) As a result of the Plaintiff's mental impairments, Dr. Keckich estimated Plaintiff would miss five days, or more, of work per month and would be unable to complete an eight-hour workday five days, or more, per month. (R. at 910.) Conversely, Drs. Foster-Valdez and Campbell concluded Plaintiff was "able to meet all of the basis mental demands of competitive, remunerative, unskilled work [with] limited social contact." (R. at 80, 93.) The ALJ assigned "[l]ittle weight" to Dr. Keckich's opinion (R. at 31), finding, like Drs. Foster-Valdez and Campbell, Plaintiff could "perform simple, routine tasks and make simple work-related decisions in a work setting with few changes and free from fast-paced production requirements" (R. at 27). And, although Plaintiff "should have no contact with the public," the ALJ found

Plaintiff could have "occasional and superficial contact with coworkers, such that he [could] work in proximity to, but not in tandem with, others." (R. at 27.) For the reasons that follow, the ALJ erred in rejecting Dr. Keckich's assessment.

The ALJ disregarded Dr. Keckich's assessment because she found it was "inconsistent" with Dr. Keckich's treatment records and progress notes. (R. at 31.) Specifically, in a progress note dated February 26, 2014, Dr. Keckich noted the following: Plaintiff reported he was doing "'better with his meds'"; he said he was "not as irritable, [and, except for his wife,] not yelling at people anymore"; he said he didn't realize he was being mean to his wife until she told him, and she only had to tell him once; he reported "doing better with sleep"; and he cut his use of cannabis by "about 50%." (R. at 829.) Similarly, on April 3, 2014, Dr. Keckich noted the following: Plaintiff felt his injection was helping his mental symptoms "significantly"; he was participating in an art group; and he participated in a dual diagnosis group until he recognized that a group member triggered his agitation, at which time he reported his agitation to his case manager rather than immediately acting on it, which was a "significant" improvement. (R. at 825.) According to the ALJ, these observations were inconsistent with the "extreme limitations" Dr. Keckich included in her assessment and, therefore, supported the weight the ALJ assigned to Dr. Keckich's opinion. (R. at 31.)

Dr. Keckich's assessment was not inconsistent with her treatment records and progress notes. (R. at 911.) "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, although Dr. Keckich observed improvements in Plaintiff's condition, she believed Plaintiff suffered from "fairly severe psychiatric illness" and "paranoia." (R. at 833.) Alongside the improvements she described in her progress notes from February 26, 2014, and April 3, 2014, she included the following observations of Plaintiff: slumped posture; intermittent and avoidant eye contact; euthymic mood; constricted affect; concrete thought process; borderline intelligence; difficulty acknowledging his psychological problems;

impaired judgment; failure to take his medications; chronic low level of functioning; substance abuse; slowed activity; underproductive speech; impaired attention and concentration; and impaired ability to abstract. (R. at 826, 831–32.) Further, in a progress note from January 15, 2014, Dr. Keckich documented an incident that took place on the same day in which Plaintiff "stormed out" of his appointment with Dr. Keckich prematurely after Dr. Keckich refused to prescribe him twenty milligrams of Valium daily for anxiety. (R. at 835–36.) On his way out of the facility, Plaintiff cursed and threatened to "slit [Dr. Keckich's] throat." (R. at 836.)

Furthermore, "[reports of improvement] must . . . be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017. Here, in an addendum to her assessment, Dr. Keckich noted that Plaintiff "still does not demonstrate ability to control behavior in a stressful situation (sometimes even in an unstressful situation)." (R. at 911.) Indeed, it would be difficult to conclude that Plaintiff's typical day challenged him with stressors like those he would face in a workplace. Plaintiff testified that on a typical day, he wakes up, drinks coffee, smokes cigarettes, and watches The Price is Right, Family Feud, and Celebrity Name Game with his wife. (R. at 55.) Afterward, he goes for a walk, eats lunch that his wife prepares for him, and spends time at a friend's house, where he watches television and engages in "chitchat." (R. at 56.) Moreover, at the time of Dr. Keckich's assessment, Plaintiff was receiving weekly home visits from clinic staff, participating in a narcotics anonymous group weekly, engaging in daily contact with his sponsor, and visiting with psychiatry every three weeks. (R. at 911.)

Thus, although there may be legally sufficient reasons for rejecting Dr. Keckich's assessment and finding Plaintiff is not disabled, it becomes clear that Dr. Keckich's assessment is not inconsistent with her treatment records and progress notes when the improvements she observed are viewed in the proper context and not in isolation.

Accordingly, the ALJ failed to provide a legitimate reason for rejecting Dr. Keckich's opinion.

### B. The ALJ Gave Sufficient Reasons for Discounting Plaintiff's Symptom Testimony

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Plaintiff testified that he was unable to work because he is "shizoaffective" and has "auditory hallucinations, . . . PTSD, . . . [and] antisocial personality disorder." (R. at 46.) According to Plaintiff, he is unable to act appropriately around others because the voices in his head "tell [him] . . . to be crazy," namely "[n]ot to listen to people" and "act like a baby." (R. at 47–48.) For the reasons that follow, the ALJ did not err in discounting Plaintiff's symptom testimony.

The ALJ provided three specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms. First, Despite Plaintiff's testimony that he was unable to act appropriately around other people because of his mental impairments (R. at 49), Plaintiff talked to his pastor every day on the telephone and saw him once a week (R. at 29–30, 57–58). On occasion, Plaintiff and his pastor talked over coffee at a shop near Plaintiff's house (R. at 30, 58.); Plaintiff did not report any difficulty acting appropriately around the shop's employees or guests. (R. at 30.)

Second, although the Plaintiff testified that he has auditory hallucinations "[e]very day" from "the time [he] wake[s] up to the time [he] go[es] to sleep" (R. at 47), he repeatedly denied experiencing auditory hallucinations since he was released from prison (R. at 832, 838, 843, 847, 850, 854, 866, 874, 883).

Lastly, Plaintiff had a history of malingering. (R. at 30.) Plaintiff argues this was not a clear and convincing reason for rejecting Plaintiff's symptom testimony because the evidence of malingering the ALJ relied on was dated before the alleged period of disability

began. (Pl.'s Br. at 18.) In assessing a Plaintiff's credibility, an ALJ may consider a Plaintiff' reputation for truthfulness. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ did not find Plaintiff was malingering during the alleged period of disability based on evidence of malingering dated outside the relevant period. Rather, the ALJ found Plaintiff's history of malingering undermined his reputation for truthfulness and, in turn, his symptom testimony. (R. at 30.)

Accordingly, the ALJ did not err in discounting Plaintiff's symptom testimony.

### C. Credit-as-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than further proceedings. (Pl.'s Br. at 22–23.) The credit-as-true rule only applies in cases that raise "rare circumstances" that permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must fail to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

The Court has reviewed the record and agrees with Defendant that the record is not fully developed and that uncertainty remains as to whether Plaintiff is disabled under the Act. The reason the ALJ provided for discrediting the opinion of Dr. Keckich was not legitimate. In light of this, the ALJ must reanalyze her opinion without considering that reason.

Accordingly, the Court will remand this matter to the ALJ for further development of the record and a disability determination.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this Order. Specifically, the ALJ must reanalyze the opinion of Dr. Keckich without considering the invalid reason provided for discrediting it.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 17th day of July, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge